UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| J.S. and T. S.<br>Individually, and as Parents and<br>Legal Guardians of M.S., a Minor,<br>    Plaintiff | :<br>:<br>:<br>:<br>: |
| V. | :   C.A. No. 16-<br>: |
| THE STATE OF RHODE ISLAND<br>DEPARTMENT OF EDUCATION, and THE<br>WESTERLY SCHOOL DISTRICT alias<br>WESTERLY PUBLIC SCHOOLS<br>    Defendants | :<br>:<br>:<br>:<br>: |

# COMPLAINT

## I.   Introductory Statement

1   This is an appeal of a special education administrative due process decision pursuant to 20 U.S.C. § 1415, R.I. Gen. Law§ 16-24-1, and § 42-35-15.

## II.   Parties

2   Plaintiffs J.S. and T.S. are the parents and legal guardians of M.S., (hereinafter the "Student") minor the Student who is presently residing, and has at all times relevant resided with her parents in Westerly, Rhode Island.  The Student currently has a 504 Plan and the Student's sibling has an Individual Education Plan.

3   Defendant Westerly District alias, Westerly School Public Schools (Hereinafter "WPS") is  a legal entity lawfully established by the Town of Westerly, State of Rhode Island, having its principal offices located in said town.

4   Defendant State of Rhode Island Department of Education is the State agency charged with implementing the procedural due process requirements of U.S.C.A. 20 § 1400 et seq. and R.I. Code R. § 300 and is the agency that is adjudicating this matter currently.

### III.   Jurisdiction

5   This Court has jurisdiction pursuant to 28 U.S.C. §§1331, 1343, 1367, 2201 and 2202, and 20 U.S.C. § 1400 et seq., and governing federal and state regulations.

### IV.   Venue

6   Venue is proper in this Court since, on information and belief, Defendants reside in the District of Rhode Island in compliance with the requirements set forth in 28 U.S.C. §1391. Venue is also proper because a substantial part of the events or omissions giving rise to the claims occurred in the District of Rhode Island.

### V.   Material Facts

7   Plaintiffs are the parents and legal guardians of the Student and the Student's sibling.

8   Both the Student and sibling have Lyme Disease and Tick Borne Illnesses.

9   Presently the Student has a Section 504 plan accommodating her Lyme Disease.

10   Plaintiffs currently reside, and at all relevant times relative to this dispute, have resided in Westerly; and, except for three (3) months at the end of her third grade, in which the Student was home schooled, the Student, always attended Defendant WPS schools.

11   In a telephone conversation between Plaintiff J.S. and Defendant WPS director of special education Melissa Denton that occurred on November 16, 2015, the plaintiff requested that the Student be considered for specialized instruction.

12   Thereafter on or around December 2, 2015 the Plaintiffs followed up and sent Defendant WPS correspondence confirming the meeting with the defendant in order to ascertain whether the Student and the Student's sibling, both of whom have documented educational disabilities, could be eligible for specialized instruction.

13	On or about December 11, 2015, Plaintiffs received two written notices from Defendant WPS for two special education eligibility determination meetings with the defendant, both which were to occur on December 17, 2015 for M.S. and their other child.

14	Also on December 11, 2015 Plaintiffs sent Defendant WPS an email that in pertinent part stated that "we made it abundantly clear…there was enough information to have a referral/eligibility meeting" and further said that it is their "expectation" that such a meeting will occur on December 17, 2015.

15	On December 17, 2015 Plaintiffs met with representatives of Defendant WPS to discuss special education eligibility for both of their children, in two separate meetings—the Student's meeting went first.

16	At significant personal expense, Plaintiffs had their children's neuropsychologist, treating physician specialist, and two (2) education advocates to both of these meetings. The Plaintiffs also had the Student's audiologist, and their attorney attend her IEP team meeting.

17	At the start of Student's IEP team meeting Defendant WPS advised it decided to proceed with Student's meeting despite its consulting physician's inability to attend, but 20 minutes later after Student's IEP team concluded, WPS's consulting physician appeared for and attended the Student's sibling's IEP team meeting.

18	Thus, by failing to include its consulting physician at the Student's IEP team meeting, Defendant WPS chose and in fact did not have sufficiently qualified professional to adequately consider or discuss the disability-related educational needs of Student's tick borne illnesses – medical and neurological based disorders.

19	Further, although Defendant WPS did have its school psychologist at the Student's IEP team meeting, she did not raise any concerns, ask even one single question, or

share any disagreement whatsoever with the evaluative findings and recommendations presented and/or by Plaintiffs' neuropsychologist, physician specialist or audiologist.

20  In fact, none of the IEP team school members of Defendant WPS asked M.S.'s neuropsychologist, physician specialist or audiologist, one single question or shared any point of disagreement or concern whatsoever about any portion of the evaluative information they shared.

21  Nonetheless, WPS Special Education Director Melissa Denton proposed conducting a whole slate of comprehensive evaluations, including a complete neuropsychological do-over, without any regard or discussion of any need for additional evaluation let alone a whole new battery, especially on a child agreeably by all adversely impaired by Lyme Disease. See, R.I. Code R. § 300.305. Plaintiff's neuropsychologist responded to this proposal by stating that another neuropsychological evaluation "is not only unnecessary – it would be inappropriate". Exhibit E.

22  The Student's neuropsychologist explained that the reliability of comprehensive testing on an individual with Lyme Disease is contingent upon knowing at the time of testing whether the Student is commonly infected inflicted with reoccurring impact or has been re-infected and is suffering present impact; and, whether the evaluator is competently experienced in working with adolescents having Lyme Disease in consideration of both its potential universal and individualized impacts.

23  Plaintiffs' neuropsychologist offered to discuss WPS's thoughts on some supplement testing if there were any concerns with her assessment selection, interpretations of findings or recommendations but no one responded.

24  The meeting was hastily concluded with Defendant WPS not finding M.S. eligible for specialized education.

25	Immediately thereafter, Defendant WPS and Plaintiffs left the Middle School and travelled to the High School where the Student's sibling's IEP team meeting convened to determine if M.S.'s sibling was eligible for specialized instruction.

26	At this meeting Defendant WPS's consulting physician appeared along with different school team members, including in particular a different school psychologist, in attendance.

27	All engaged in comprehensive conversations with the Plaintiffs' medical professionals and the parties.

28	At this meeting Defendant WPS determined that the Student's sibling was eligible for specialized instruction and the Individual Education Plan team developed an Individual Education Plan for this child.

29	The discussions and decisions in the Student's sibling's IEP team, which included WPS's treating physician were in stark contrast to the lack of discussion and decision in the Student's IEP team meeting and fuels to reasonable degree the parental concerns with the conduct and course of the Student's IEP team meeting, namely meaningful parental participation, including but not limited to adequate consideration of parentally obtained evaluations, sufficient understanding of WPS action and proposed actions through *prior* written notice recording the IEP teams considerations and conclusions relative to, an their ability to make informed decisions including in giving (or not) consent.

30	On December 22, 2015 WPS sent Plaintiffs a letter requesting additional evaluations for M.S., including another neuropsychological evaluation.

31	R.I. Code R. § 300.503 (a) requires that notice that meets the requirements of this section "must be given to the parents of a child with a disability a reasonable time (ten school

days) before the public agency (1) Proposes to initiate or change…or refuses to initiate or change the identification, evaluation or educational placement of the child…" Id.

32    This correspondence violates § 300.503 (a) because the IEP team did not discuss any reason or basis for Defendant WPS's proposed new series of evaluations and any reason or basis given after the occurrence of this meeting cannot constitute *prior* written notice and further would deprive parents meaningful participation to way in on their thoughts, concerns and inputs relative to. The correspondence also violated § 300.503 because it did not explain the basis for Defendant WPS's decision thereby denying them the ability to provide informed consent. In fact there can be no 'Prior Written Notice' because Defendant WPS's offered no basis as the reason for its decision to conduct its proposed series of evaluations for discussion at the IEP team meeting and any basis offered now is after the fact.

33    On January 9, 2016, Plaintiffs responded.  They reiterated the fact that none of the professionals at the meeting from WPS asked even a "SINGLE QUESTION" about the evaluations presented; that "any delay in determination of eligibility…denies…meaningful educational benefit" to the Student; that "[a] single conclusory statement made by you in a letter attached to our 'Prior Written Notice'… are…lacking any substantive merit; and, that the regulations allow for additional data but not do over data."

34    The purported prior written notice given by Defendant WPS for these evaluations was deficient in that 'prior written notice' is necessarily specific to the discussions of the December 17, 2016 IEP team meeting and since Defendant WPS's never gave the basis, whatsoever, for its proposed series of evaluations during that meeting 'prior written notice' of that basis was and still is deficient.

35    So Plaintiffs filed for due process on February 22, 2016.

36    Plaintiffs' complaint alleged that Defendant WPS failed to:

(1) Comply with their child find obligations and in particular to comprehensively conduct an initial evaluation for the purposes of determining eligibility for specialized instruction;

(2) Identify M.S. as a child with a disability eligible for specialized instruction;

(3) Have sufficient, adequate credentialed personnel present at the December 17, 2015 IEP meeting, to appropriately consider parentally obtained comprehensive evaluative reports; and,

(4) Identify what additional "data" is needed to determine M.S.'s eligibility thereby denying her parents meaningful opportunity to participate in the decision making process.

37      When Plaintiffs submitted their due process complaint on February 22, 2016 they included their Parent Input and Concerns for Consideration ("PICC") as it's Exhibit 1.

38      The PICC identifies eleven (11) meetings Plaintiffs had with the school district in which WPS requested evaluations; in which Plaintiffs provided consent for the requested evaluations; and, in which they discussed and were ultimately denied specialized instruction eligibility to the Student each and every time.

39      There was one instance in which Plaintiffs denied consent, and that was because the requested evaluation was one for a medical evaluation outside the scope of the Student's educational needs; regardless it was an evaluation that ended up being unnecessary and moot as WPS has since agreed the Student does in fact have Lyme Disease.

40      According to the PICC these meetings occurred:

a)      When the Student was in first grade WPS held a special education evaluation meeting on June 8, 2011.

    (1) At the meeting Plaintiffs outlined numerous concerns relative to the Student's education, including her "demonstrated weakness in reading."

    (2) Since the Student was in 1st grade, WPS specifically ruled out auditory processing disorder and central auditory processing disorder.

    (3) At the meeting Plaintiffs authorized WPS to complete their requested speech and language evaluation.

b)     Plaintiffs and WPS met again on June 22, 2011. At the meeting WPS determined that the Student was not eligible for specialized education.

c)     On November 16, 2011 the parties met again to discuss the Student's Central Auditory Processing Disorder and significant spatial visual processing disorder. WPS concluded that the Student was not eligible for specialized instruction and instead referred the Student to a 504 Team to discuss two new diagnoses.

d)     On October 25, 2012 the parties met once again and Plaintiffs authorized "WPS to conduct …Educational, Speech/Language, Occupational Therapy, Classroom Observation)"

e)     On December 20, 2012 the parties met to review the results of these evaluations. The evaluation team deferred eligibility until outstanding questions from outside specialists are answered.

f)     On January 15, 2013 the parties met yet again to discuss eligibility.

    (1) At the meeting Parents inform WPS that the Student is missing numerous days at school, including five (5) consecutive days.

    (2) Westerly WPS denied special education eligibility for the Student.

    (3) After not determining that the Student was eligible for specialized instruction the parties discussed a 504 Plan and consented to a district audiological assessment.

  (4) This is the first time that WPS offered to discuss a 504 Plan since it found the Student eligible for such a plan back on November 16, 2011—fourteen (14) months after the fact.

 g) The parties met again on March 13, 2013 to discuss the Student's 504 eligibility.

  (1) WPS determined that the Student did not have central auditory processing issues even thought an outside evaluator and district evaluator had multiple and similar recommendations.

  (2) WPS informed Plaintiffs that the Student was anxious due to the fact that the Student is no familiar with the evaluators doing the evaluations. Id.  Unfortunately however this is contrary to the school education evaluator, school psychologist, and the evaluators' observations.

  (3) WPS also began inquiring about the Student's medical condition and the meeting ended without completing the Student's 504 Plan.

 h) The parties met again on September 9, 2013 and September 25, 2013 and completed the Student's 504 Plan.

 i) Because the Plaintiffs were concerned with the Student's lack of progress, the parties had another 504 Plan meeting on November 7, 2014.

  (1) According to the Plaintiffs, they facilitated the review of copious document and "we strongly feel that a referral to special education from WPS staff should have been made but the WPS district failed to identify the need."

 j) Because the above-aforementioned meeting ran out of scheduled time, the parties had another 504 Plan meeting on January 8, 2015.

  (1) WPS eliminated two accommodations in the Student's 504 Plan.

(2) WPS's interim superintendent denied a request to meet with Plaintiffs after the meeting.

41      WPS answered the complaint on or about March 1, 2016 denying all allegations.

42      Pursuant to the applicable state and federal regulations under the Individual with Disabilities in Education Act, the parties held a resolution session on March 8, 2016 in order to ascertain whether the parties can resolve the dispute without going to a hearing.

43      The parties could not come to agreement at the session.

44      Pursuant to the regulations, the public agency must ensure that not later than forty-five (45) days after March 8, 2016 a final decision on the hearing is reached.  See, R.I. Code R. § 300.510(b) and 300.515.

45      Forty-five (45) days from March 8, 2016 is April 22, 2016.  See, Exhibit G at p. 3.

46      On March 17, 2016 Defendant RIDE Hearing Officer sent the parties correspondence in order to set a pre-hearing conference.

47      In his correspondence, the Hearing Officer **stated in bold: "Due to the strict timeline, it is important to meet as soon as possible."**

48      Thereafter on or around March 18, 2016 WPS filed a Motion to Dismiss and also Exclude the exhibits attached in Plaintiffs' complaint as evidence.

49      According to the Motion, "[o]n or about December 17, 2015, a meeting was held at the request of the parents to determine whether or not MS was eligible for an IEP."

50      Defendant WPS's Motion did not allege that the Plaintiffs' complaint did not comply with R.I. Code R. § 300.508(d), the only regulation that addresses the sufficiency of a complaint.

51      Defendant WPS's Motion also did not contain any evidence or cites of legal authority. .

52	Plaintiffs' responded to Defendant WPS's Motion on or around March 22, 2016.

53	A pre-hearing conference was held on March 24, 2016, at which time, the Hearing Officer tried to amicably resolve the dispute off the record, and if not, set up the schedule for the hearing to proceed.

54	At the pre-hearing conference, WPS's counsel argued that Plaintiffs' complaint should be dismissed and Plaintiffs' counsel requested any legal authority she had to support her motion.

55	A hearing was held on April 8, 2016 to consider WPS's motion.

56	Contrary what it said in its Motion, at the hearing the district took the position that "the District made it clear to the parent that we didn't go to eligibility."

57	Defendant WPS went on to say that "the evaluations that the parent provided us were considered. Unfortunately, the School District choose not to substitute it for its own" and therefore demanded a number of evaluations.

58	Other than arguing that R.I. Code § 300.301 allows the school district an unfettered right to evaluations, Defendant WPS did not provide for any other legal and/or factual basis for their position.

59	In fact, it did not even submit any evidence to support its position.

60	It did present six (6) cases to support its motion. Since this was the first instance in which Plaintiffs' counsel had an opportunity to review the case law (which was requested at the April 8th pre-hearing conference), he thereafter requested time to respond to this new legal authority that was not previously presented.

61	Plaintiffs' counsel thereafter responded to this additional information on April 15, 2016.

62	The hearing officer issued a decision and Order on or about April 28, 2016, sixty-seven (67) days after Plaintiffs first filed their due process complaint.

63	Pertinent parts of the Hearing Officer's Order denied Defendant WPS's Motion to Dismiss and exclude the exhibits from evidence; it also required Plaintiffs to "execute all releases necessary for school department to conduct appropriate evaluations of M.S. and that the school department shall provide parents with the appropriate content in its notice to evaluate as required by § 300.503."

64	The Order does not mention any of the eleven (11) meeting the parties had as outlined in Plaintiffs' PICC.

65	The Order also stated that Defendant WPS was to "complete the evaluation(s) within sixty days and convene an identification meeting upon completion of the evaluation(s)."

66	As a consequence, it would have been 126 days after Plaintiffs filed for a hearing that Defendant WPS would have had to complete evaluations by, this does not consider a subsequent IEP meeting to determine (or not determine) that the Student is eligible, and a subsequent hearing on the merits if a party disagrees with this decision, and/or any extensions.

67	The regulations confer the right of a hearing officer to order an independent evaluation at public expense but do not provide any authority for them to direct a parent to complete evaluations conducted by the district. R.I. Code R. § 300.502 (c).

68	Lastly, the Order confirms the fact that Defendant WPS's Motion did not challenge the sufficiency of Plaintiffs' complaint.

69	On May 6, 2016, seventy-five (75) days after Plaintiffs filed their due process request, and fourteen (14) days after the regulations require a final decision, their counsel receives a request to complete a number of "appropriate" evaluations from Defendant WPS, as well as sign an authorization that allows the Defendant to complete a "medical assessment".

70   The correspondence did state the action proposed, the evaluations proposed, and a description of the other factors relevant to the Hearing Officer's decision.  It also did not define what a "medical assessment" was.

71   However, just as was the case with Defendant WPS's December 22, 2015 correspondence, this request did not comply with R.I. Code § 300.503 because it did not: a) explain why the defendant proposes the action; b) contain a copy of the procedural safeguards; and c) provide sources to the parents to contact to obtain assistance in understanding the provisions of their action; a description of other options that the IEP team considered and were rejected.  Id.  Again, it could not since no reasons why WPS was demanding these evaluations was discussed at the IEP team meeting they were proposed. Thus, any basis purported now is after the fact and at the further expense of meaningful parental participation and informed consent.

72   The correspondence did not provide Plaintiffs with an adequate explanation and as a consequence did not allow them an opportunity to provide informed consent.

73   The correspondence also did not contain any releases for Plaintiffs to sign.

74   Plaintiffs concluded that WPS did not comply with the terms of the Hearing Officer's Order regardless of whether the releases were included so they filed a Motion for Summary Judgment and a request to commence the due process timeline on May 27, 2016.

75   Included in Plaintiffs' Motion was a copy of the two page correspondence received.

76   On June 10, 2016 Plaintiffs received WPS's Motion to Dismiss.

77   On June 17, 2016 the Hearing Officer informed the parties that he would have a hearing on the record on June 30, 2016 for the "distinct purpose of making a factual determination related to the non-compliance" of his Order dated April 28, 2016.

78    On June 17, 2016 WPS's counsel emailed the Hearing Officer and Plaintiffs to inform them that she is "court excused from 6/27-7/6".

79    Because WPS's counsel did not provide a copy of the court excusal and because the Hearing Officer never separately confirmed that he was excusing her, Plaintiffs' counsel sent a letter via email to the Hearing Officer, Defendant WPS's counsel, and her secretary on June 28, 2016 questioning the validity of the excusal as well as inquiring as "to the status" of the hearing on June 30th.

80    Neither the Hearing Officer, WPS's counsel, nor her secretary responded to Plaintiffs' counsel's correspondence.

81    During the time between June 28, 2016 and June 30, 2016 WPS's counsel and secretary corresponded via email with Plaintiffs' counsel on a separate legal proceeding.

82    Since neither the Hearing Officer nor WPS's counsel responded to Plaintiffs' counsel letter, at her own significant personal expense, Plaintiff J.S., Plaintiffs' lawyer, and her expert educational advocate showed up at the Hearing Officer's office on June 30, 2016 at 1:45 PM expecting a hearing.

83    The Hearing Officer came to the office shortly after 2:00 PM and conducted the hearing.

84    The Hearing Officer recorded the hearing on his cellular telephone.

85    At the hearing, Hearing Officer determined that this matter would go to a hearing on the merits forthwith.

86    Because of this decision, Plaintiffs' counsel and the Hearing Officer did not have Plaintiff J.S. or her witness testify.

87     After the hearing, Plaintiffs' counsel requested a copy of the hearing recording and the Hearing Officer said he would provide it to him. However, he has yet to receive a copy of the recording.

88     On July 15, 2016 Plaintiffs' sent a letter to the Hearing Officer informing the him that "a delay of 158 days in a due process hearing constituted a denial of the student's free appropriate education", and that "[i]f this matter is not scheduled for a hearing forthwith, my client reserves the right to pursue injunctive relief in federal court."

89     On July 19, 2016, approximately one-hundred and forty nine (149) days, after Plaintiffs requested a due process hearing and eighty-nine (89) days after the regulations require a decision, Plaintiffs received a letter from the Hearing Officer requesting yet another hearing on the matter he previously decided in a hearing on June 30, 2016.

90     The correspondence stated "[t]o date, this [April 28, 2016] Order has not been complied with and the issue as a whole remains unresolved."

91     The correspondence goes on to schedule possible hearing dates for an "evidentiary hearing" on the matter on either August 9, 2016 and/or August 11, 2016.

92     Shortly thereafter on July 26, 2016 Plaintiffs' filed a verified complaint against Defendant State of Rhode Island Department of Education ("RIDE")with this Honorable Court that included a Motion for a Preliminary Injunction and accompanying Memorandum of Law. See, C.A. No. 16-416 ECF No. 1, 2, and 3.

93     RIDE objected and filed a motion to dismiss and remand on August 3, 2016. See, Id. at ECF No. 6 and 7.

94     Subsequent to that the parties held a conference call with this Honorable Court on August 4, 2016 in which it was decided that this matter would not go forward until after the hearing on August 9, 2016.

95     When the hearing commenced on August 9, 2016, the Hearing Officer stated that the issue at the hearing "centered around whether [Defendant WPS's] correspondence of May 4, 2016, marked as Joint Full Exhibit 1…satisfied the requirement set forth and contained appropriate content as required by § 300.503."

96     "The letter of May 4th is simply a two page letter from counsel for [Defendant WPS] directed to counsel for parents. In sum the letter purports to be [Defendant WPS's] attempt to comply with the April 28th Order as providing parents appropriate content and releases for the requested evaluations."

97     The letter stated that the "Parents are required to execute all releases necessary for the School Department to conduct appropriate evaluations of M.S." It listed five evaluations and an "Observation".

98     The letter further stated that "In addition, we requested releases in order for the School Physician to speak to with [M.S.'s] current doctors who are treating her for chronic health problems to complete the medical assessment."

99     Unfortunately however, "medical assessment" is not defined and therefore it is not limited in scope.

100    In the hearing, WPS offered no credible evidence in furtherance of its burdens or argument. WPS offered zero evidence on the appropriateness of its requested evaluations or conformity with RI Code §§ 300.503.

101    Plaintiff J.S. testified that Defendant WPS did not provide an explanation as to why it wants to do these evaluations.

102    She further testified that she did not know what an "appropriate evaluation" or what a "medical assessment" was.

103    She also testified that if she signed the proposed "medical assessment" Defendant WPS would have access to her child's entire medical history.

104    Later on she testified that she had concerns about what a "medical assessment" was in March of 2015. Id. at 42-43.

105    The "Parent was the only witness to testify" and "The Hearing Officer does not question the credibility of Parent as a witness as pertaining to the specific issue of whether or not she received a letter with appropriate attachments."

106    According the Hearing Officer, in the hearing, the "Parent's counsel in argument stated: 'that in my May 27th memo I believe …I referred to the fact that the May 4th letter was only two pages….[However, u]pon review... no such reference to May 4th letter being two-pages could be found."

107    The Hearing Officer further stated that "I would agree with Parent counsel if that were in fact the case but that does not appear to be the case."

108    Plaintiff's May 27th Motion did not contain any specific language stating that the May 4th correspondence was only two pages because they included it as an exhibit to their motion.

109    The Hearing Officer determined that there was "a strong presumption that no attachments were received by the Parents."

110    The Hearing Officer also found  "[c]learly the two-page letter sent from WSD counsel to Parent's counsel does not in and of itself satisfy the requirements of the Order.

111    He went to state "but …it is not that simple.  A reading of the letter would clearly indicate that there was more to be considered in the referenced attachments."

112    Without providing any legal authority, the Hearing Officer then shifted the burden to the Plaintiffs, stating that "there is an equally strong presumption that the plain reading of the

letter makes multiple references to the attachments and the failure to identify this appears to be Parent's failure and I believe that it is more than a reasonable expectation".

113   In doing so further the Hearing Officer erroneously presumes the releases may contain adequate information to cure the shortcomings of the 2-page letter, but there is no evidence on the record to support such a specious conclusion.

114   He thereafter dismissed Plaintiffs' entire claim without prejudice "for failure to comply with the Order dated April 28, 2016"

115   The Hearing Officer never addressed any of the other objections Plaintiffs had relative to Defendant WPS's lack of compliance with their prior written notice requirements that were outlined in their May 27, 2016 motion.

116   The Hearing Officer also never provided a legally sufficient explanation for changing his decision to move forward with this case on the merits at the June 30, 2016.

117   And the Hearing Officer only addresses one allegation in Plaintiffs' due process complaint; he does not address any of their three other allegations.

118   As of the date of this amended complaint, Plaintiffs have gone more than 190 days without a hearing on the merits.

119   As a consequence, Plaintiffs are filing a timely appeal of this decision.

120   The Student recently received her school schedule from Defendant WPS; even though she does not have an IEP, the schedule requires her to leave class for "interventions" in Math five days per week, and as a consequence she is missing her other subjects.

121   Defendant WPS continues to treat the Student differently and not in compliance with the law.

## VI. Claims for Relief

122    Plaintiff incorporates in the counts below the allegations contained in ¶¶1 through 121 above.

### COUNT ONE
*Violation of the Student's Right to a Free Appropriate Pubic Education*

123    Plaintiffs are aggrieved by the findings and decision of the Hearing Officer under 20 U.S.C. § 1400 et seq., R.I. Gen. Law § 42-35-15, and R.I. Code R. § 300.516.

124    The Hearing Officer's Decision is not reasonably supported by the totality of the evidence in the record, is not based on a preponderance of the evidence in the record, nor is it conformity with applicable statutes and precedents; therefore, it is clearly erroneous and error of law.

## VII. Prayers for Relief

**WHEREFORE,** Plaintiff prays that this Court grant the following relief:

1.    Reverse the Administrative Decision of the Hearing Officer in whole or in part as the Court seems just by determining that;

   a.  The Hearing Officer's determination that Plaintiffs' violated his April 28, 2016 Order was not reasonably supported by the totality of the evidence in the record, is not based on a preponderance of the evidence in the record, nor is it conformity with applicable statutes and precedents; therefore, it is clearly erroneous and error of law;

2.    Determine that Plaintiffs are a prevailing party pursuant to 20 U.S.C. § 1400 et seq. and/or other applicable law, and upon a subsequent motion award them reimbursement of their attorneys' fees; or alternatively,

3.    A determination that the Hearing Officer's decision was not substantially justified in law and had no reasonable basis in law or in fact, and:

    a. Pursuant to R.I. Gen. Law § 42-92-1 et seq. award Plaintiffs attorney's fees; and,

    b. Reimbursement of expert fees for the costs of bringing Plaintiffs' expert educational advocate to the June 30, 2016 hearing under R.I. Gen. Law § 42-92-1 et seq.

4. An award of any other damages or relief available under applicable law;

5. Such other and further relief as this Court deems just and proper.

**Plaintiffs J.S. and T.S.**
**By their attorneys,**
**SINAPI LAW ASSOCIATES, LTD.**

**Date: September 6, 2016**       /s/Gregory A. Mancini
**Gregory A. Mancini (RI BAR 5740)**
2374 Post Road, Suite 201
Warwick, RI 02886
Phone: (401) 739-9690; FAX: (401) 739-9040
Email: gmancinilaw@gmail.com